# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DEREK LYONS, BRIDGETTE LEWIS, TIFFANIE LEWIS, BRYAN SCHULTZ, ANTHONY ALDEGUER, JOSHUA SMITH, JESSICA DOVE, and BRANDON MCKEY**,<br><br>Plaintiffs,<br><br>v.<br><br>**COLETTE PETERS, MIKE GOWER, OFFICER HELTON, DENNIS TIMMINS, RICK ANGELOZZI, BRIDGETTE AMSBERRY, BRANDON KELLY, BRIAN BELLEQUE, ROB PERSSON, ARLENE WHITNEY, JERI TAYLOR, STEVE BROWN, TIM CAUSEY, CHRISTINE POPOFF, KENT FANGER, and JOHN DOES 1-10, JANE DOES 1-10**,<br><br>Defendants. | Case No. 3:17-cv-00730-SI<br><br>**OPINION AND ORDER** |

Leonard R. Berman, LAW OFFICE OF LEONARD R. BERMAN, 9220 SW Barbur Blvd. Suite 119, Box 180, Portland, OR 97219. Of Attorneys for Plaintiffs.

Ellen F. Rosenblum, Attorney General, Andrew Hallman and Jessica Spooner, Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301-4096. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs are current or former inmates of the Oregon Department of Corrections ("ODOC") who allege that Defendants violated their Eighth Amendment rights when Defendants

PAGE 1 – OPINION AND ORDER

served inadequate food at state prison facilities. Defendants are facility superintendents, food procurement and contract specialists, and the food services administrator for ODOC. Defendants move for summary judgment on all of Plaintiffs' claims. For the reasons that follow, Defendants' Motion for Summary Judgment (ECF 95) is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiffs are current or former inmates at ODOC. They allege that ODOC violated their constitutional rights by feeding them food that was marked "not for human consumption," was not nutritionally adequate, and was generally substandard, spoiled, unhealthy, moldy, expired, and stored for excessive periods of time.

Plaintiff Bryan Schultz alleges that he once felt ill after consuming a "pale," "slimy" fish that was marked "not for human consumption." Def. Ex. 6.[1]

Plaintiff Bridgette Lewis alleges that she also felt sick after eating fish labeled "not for human consumption." Def. Ex. 9. Plaintiff Bridgette Lewis claims that she complained to multiple ODOC employees about the quality of the food, which she claims made her sick "a few times." *Id.*

Plaintiff Tiffanie Lewis testified that she observed, but never consumed, fish marked "not for human consumption," but she never got sick from the food served in ODOC facilities, and testified that she found the food, including meat alternative trays, "amazing." Def. Ex. 11.

Plaintiff Brandon McKey testified that he became ill five times during his 50 months of incarceration, including once on June 14, 2017 when Plaintiff McKey believes he suffered from food poisoning. Def. Ex. 15. Plaintiff McKey also testified that on at least ten occasions, he avoided eating food that he perceived to be of poor quality or spoiled and that on multiple occasions he complained about the food. *Id.* Plaintiff McKey testified that he maintained his weight and his good health while incarcerated. *Id.*

Plaintiff Derrick Lyons testified that he witnessed or consumed spoiled milk on several occasions as well as lettuce that he described as "slimy." Def. Ex. 17. He testified that he occasionally got an upset stomach after eating inadequate food. *Id.* He also testified that he observed a box labeled "not for human consumption." *Id.*

Plaintiff Anthony Aldeguer testified that he consumed "green-ish" eggs and undercooked chicken while in ODOC custody. Def. Ex. 2. He also testified that he consumed chicken patties

---

[1] The Court refers to Defendants' attachments to the Declaration of Andrew Hallman as Defendants' exhibits.

that made him sick on one occasion, regularly consumed spoiled milk, and consumed spoiled vegetables once per month, bad hamburger once every two months, and fish labeled "not for human consumption" once every six weeks. *Id.* Plaintiff Aldeguer's weight did not change during his period of incarceration, but he experienced diarrhea, stomach aches, and dry heaves. *Id.*

Plaintiff Joshua Smith testified that he was served spoiled milk, discolored roast beef, bland and undercooked pork, and fish that tasted "horrible." Def. Ex. 4. Plaintiff Smith testified that he believed the food at ODOC made him constipated. *Id.*

Plaintiff Jessica Dove testified that she observed flies in the soup, undercooked hamburgers, expired potatoes, slimy and brown lettuce, and pink fish patties labeled "not for human consumption." Def. Ex. 13. She testified that she suffered from stomach aches, diarrhea, and vomiting caused by the food in ODOC. *Id.*

## DISCUSSION

### A. Evidentiary Issues

As a preliminary matter, Defendant raises a number of evidentiary objections to Plaintiffs' exhibits attached to Plaintiffs' response in opposition to Defendants' motion for summary judgment. Defendants object to Exhibit 1, also labeled Exhibit A, which appears to be a photograph of a cardboard box labeled "Frozen Herring Whole Round" and "Not for Human Consumption." Berman Decl. Ex. A. Plaintiff explains that the photograph was taken by an unnamed inmate's family member who works in the fishing industry. The family of the unnamed inmate sent the photograph to Plaintiffs' counsel, who believed the box looked similar to boxes of frozen fish that Plaintiffs described seeing in ODOC facilities. Defendant objects that this photograph lacks foundation and has not been authenticated under Federal Rules of Evidence 401 and 901(a). Rule 901 requires that "the proponent must produce evidence sufficient to

support a finding that the item is what the proponent claims it is." *United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014). This may be done through testimony of a knowledgeable witness, such as the testimony of the person who took the photograph who can testify that the photograph accurately depicts what the witness saw. *See United States v. Brooks*, 772 F.3d 1161, 1171 n.3 (9th Cir. 2014) (witness testified that the photographs admitted into evidence were the ones he took)*; Bennett v. Misner*, 2004 WL 2091473, at *19 (D. Or. Sept. 17, 2004) (rejecting admission of photograph of prison food with expiration dates to prove Eighth Amendment claims because photograph was not appropriately authenticated).

The Court finds that this photograph lacks appropriate authentication. Not only is the source of the photograph entirely unknown and unnamed, but the photograph does not even purport to be a photograph of food at ODOC facilities. Instead, the box was apparently located somewhere in a fishing warehouse. ECF 111 at 9. There is also no basis to conclude that this photograph of a box labeled "Frozen Herring" and "Not for Human Consumption" taken somewhere in the fishing industry has any relevance to food served to inmates at ODOC facilities. The photograph also contains hearsay, because Plaintiffs appear to assume that the labels on the box can be used to prove the contents of the box.[2] *See United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (allowing labels on box to be used for the truth of the matter asserted only under business records exception to hearsay, which Plaintiffs do not assert applies here). Were this case to proceed to trial, inmates could testify about the food they consumed and what they personally witnessed. An anonymous photograph of a labeled box in an unknown

---

[2] Even if the Court were to take the labels on the box for the truth of the matter asserted and assume that the box did contain frozen herring, Plaintiff Aldeguer testified that he knew the fish he was eating was pollack, not herring. Def. Ex. 2 at 9. Plaintiff Tiffanie Lewis testified that the boxes she saw that were labeled "not for human consumption" were boxes of meat, not boxes of fish. Def. Ex. 11 at 4.

location is hearsay and lacks foundation, authentication, and relevance to the issues presented by this lawsuit.

Defendants also object to Exhibit 1, a spreadsheet that appears to list names of individuals and their complaints with the food served at ODOC facilities. Berman Decl. Ex. 1 ("Seen food labeled Not Fit . . . told to remove labels"). The document contains multiple levels of hearsay, as it appears to be notes taken by someone in Plaintiffs' counsel's office reporting what inmates told them about the food as well as what inmates reported that prison officials told them. *See* Berman Decl. Ex. 1-3 ("Has two other issues to discuss with Mr. Berman"). Plaintiffs appear to rely on the document to prove the truth of the allegations and statements contained therein. This is both hearsay and hearsay within hearsay. *See* Fed. R. Evid. 801, 805. Therefore, this document will be excluded, but were this case to proceed to trial, inmates could testify about what they personally saw and experienced.

Defendants also object to Exhibits 3, 4, and 5, the tort claims notices, as hearsay. The Court agrees that any statements contained in the tort claims notices describing what Plaintiffs told Mr. Berman are hearsay. The tort claims notices cannot be used to prove the truth of the allegations that Plaintiffs made to Mr. Berman. *See* Fed. R. Evid. 801. They can, however, be used to demonstrate whether notice or exhaustion requirements were met. Therefore, the Court does not exclude the entirety of the tort claims notices but will not rely on them proof of the truthfulness of the allegations Plaintiffs describe.

Defendants object to the declaration of Natasha Loftis. Ms. Loftis was not disclosed as a witness during the course of the lengthy discovery in this case. Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information."

Fed. R. Civ. P. 26(a)(1)(A)(i). "[I]f the party learns that in some material respect the disclosure or response is incomplete or incorrect" it must supplement or correct its initial disclosures. Fed. R. Civ. P. 26(e). A failure to disclose information or identify a witness as required by Rules 26(a) and (e) means that party may not use that information or witness as evidence on a motion. Fed. R. Civ. P. 37(c). Accordingly, because Plaintiffs did not disclose Ms. Loftis as a witness at any point before Plaintiffs submitted her declaration in support of their opposition to Defendants' motion for summary judgment, Plaintiffs have failed to disclose Ms. Loftis in a timely manner and cannot now rely on her declaration in support of their opposition to Defendants' motion. Ms. Loftis's declaration is excluded.

**B. State Law Claims**

Plaintiffs argue that the section of the Third Amended Complaint titled "FIRST CAUSE OF ACTION Eighth Amendment (Cruel and Unusual Punishment)" pleaded state law claims under the Oregon Constitution. But this section of the Complaint only alleges claims under the United States Constitution. Plaintiffs cite to Sections 9, 13, and 16 of the Oregon Constitution that create substantive rights implicated by Plaintiffs' allegations and argue that the Complaint therefore pleads violations of those sections of the Oregon Constitution. The Complaint is clear, however, that the Eighth Amendment is the source of Plaintiffs' claims:

> The acts and omissions of all defendants []Peters et al, enumerated above, who had a constitutional duty to protect plaintiffs and fellow inmates from violations of the Eighth and Fourteenth Amendments to the United States Constitution, amunted [sic] to a deliberate indifference to their nutritional and health needs. Defendants violated the requirements of the Eighth Amendment by providing spoiled, substandard, and literally marked "not for human consumption" comestibles to inmates as though they were yard animals.

*See* ECF 40 ¶ 25. One passing reference to the Oregon Constitution, without stating that Plaintiffs intend to bring any claims under the Oregon Constitution, does not put Defendants on

PAGE 7 – OPINION AND ORDER

notice that Plaintiffs intended to bring state law claims. Even if Plaintiffs had adequately pleaded state claims, those claims would fail as a matter of law. *See Hunter v. City of Eugene*, 309 Or. 298, 303 (1990) ("Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations.").

**C. PLRA Exhaustion**

Defendants argue that Plaintiffs Dove and Lyons failed to exhaust administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). Plaintiff responds that, because neither Dove nor Lyons was incarcerated at the time that the original complaint was filed, they are not subject to the exhaustion requirements of the PLRA. Plaintiff provides no legal support for the assertion that a plaintiff's incarcerated status is only relevant at the time of filing of the original complaint, as opposed to the time of filing of the operative complaint. Both Plaintiff Dove and Plaintiff Lyons were out of custody at the time of filing of the original complaint, but by the time the operative complaint (in this case the Third Amended Complaint) was filed, both were in custody again. The exact dates that Plaintiffs Dove and Lyons were incarcerated are not disputed, and Plaintiffs do not dispute that Dove and Lyons failed to exhaust their administrative remedies—the only dispute is whether they are subject to those exhaustion requirements as a matter of law.

Both Plaintiffs are subject to the exhaustion requirements of the PLRA. *See Jackson v. Fong*, 870 F.3d 928, 937 (9th Cir. 2017) (holding that a plaintiff's incarceration status when he files the operative complaint, not the original complaint, is what determines whether exhaustion requirements under the PLRA apply); *see also Jacobsen v. Curran*, 2018 WL 1693382, at *4 (E.D. Cal. Apr. 6, 2018) (requiring plaintiff to comply with PLRA exhaustion requirements where plaintiff was released from custody after allegedly wrongful events occurred, but was re-incarcerated at the time he filed the operative complaint); *McCullough v. Yates*, 2011 WL

773233, at *2 (E.D. Cal. Feb. 28, 2011) (same). Although both Plaintiffs were briefly released from state custody after the events giving rise to their claims, they were both in custody at the time of filing of the operative complaint. Thus, they are required to exhaust their administrative remedies under the PLRA. Plaintiff does not dispute that they failed to do so. Therefore, the Court dismisses the claims of Plaintiffs Dove and Lyons without prejudice.

**D. Statute of Limitations**

Defendants argue that Plaintiffs Schultz and Bridgette Lewis bring untimely claims, and therefore their claims should be dismissed with prejudice. Federal claims brought under 42 U.S.C. § 1983 borrow the statute of limitations from the state law statute of limitations for personal injury claims. *See Wilson v. Garcia*, 471 U.S. 261 (1985); *see also Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1236 (D. Or. 2017). In Oregon, the applicable statute of limitations is two years. *See Sanok v. Grimes*, 306 Or. 259, 263 (1988) (applying Or. Rev. Stat. § 12.110 two-year statute of limitations for personal injury claims to § 1983 claims). Plaintiffs filed the original Complaint in May of 2017. Thus, for Plaintiffs' claims to be timely, they must involve events that occurred in or after May of 2015.

Plaintiff Bridgette Lewis alleges that while she was a prisoner at Coffee Creek Correctional Facility in July of 2013, she handled boxes of fish marked "not for human consumption." ECF 40 at ¶10. After seeing the boxes labeled "not for human consumption" Plaintiff Bridgette Lewis testified that she stopped eating the fish. Plaintiff Bridgette Lewis could not recall eating any food products that caused her to become ill after she stopped eating the fish. See Def. Ex. 9 at 14 (Bridgette Lewis Deposition) ("Q: Okay. And so you testified that the adverse health consequences of the food stopped sometime after 2013 or in 2014, when you stopped consuming the fish products, correct? A: Yeah. A couple of different times other food would come into play. But like I said, within 3 years I don't really fully remember every single

PAGE 9 – OPINION AND ORDER

meal."). Because Plaintiff Bridgette Lewis's allegations relate to events from 2013, or, at the latest, 2014, her claims pertain to events that occurred more than two years before the filing of the complaint in 2017.

Plaintiff Schultz "raises a single allegation regarding the allegedly inadequate food: While housed at the Eastern Oregon Correctional Institution ("EOCI") and working in the kitchen, he observed and consumed a 'pale, slimy' fish that was marked 'not for human consumption,' which made him feel ill." ECF 111 at 2-3. The housing records in this case demonstrate that Schultz was housed in the EOCI from December 2011 until August 2014, and Plaintiff does not dispute the accuracy of the housing records. *See* Def. Ex. 5. The two-year statute of limitations for any constitutional claims that arose out of Plaintiff Schultz's stay at EOCI therefore expired – at the latest – in August of 2016. Plaintiff Schultz does not allege that he was served inadequate food at any other correctional institution after he left EOCI in 2014. Therefore, Plaintiff Schultz's claims are barred by the two-year statute of limitations.

### E. Supervisory Liability

Defendants argue that the claims against the supervisory Defendants—Defendants Peters, Gower, Angelozzi, Amsberry, Kelly, Belleque, Persson, Taylor, Brown, Causey, and Popoff—should be dismissed because there is no evidence that these defendants had any knowledge of or involvement in the food services in the institutions. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's

wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Id.* (citation omitted).

Plaintiffs' allegations amount to no more than a theory of *respondeat superior*. The Third Amended Complaint alleges that "[b]y information and belief, the supervisory defendants . . . had knowledge of and/or ratified the purchasing, procuring and serving of spoiled, inedible and/or not fit for human consumption food by their staff through memos, emails, conference and phone calls and approval of procurement forms, hence binding them as complicit and liable for these alleged constitutional violations." ECF 40 ¶ 10. Discovery has not produced any of the alleged memoranda, emails, conference and telephone calls, or procurement forms that Plaintiffs thought may have existed. Plaintiffs do not even argue in their response to Defendants' Motion for Summary Judgment that any supervisory defendant besides Kent Fanger had any knowledge or personal involvement in any of the alleged constitutional violations. *See* ECF 111 at 11.

Plaintiffs argue that, because Kent Fanger knows the organizational structure of food services within ODOC, he should be held responsible for every aspect of food services within ODOC.[3] But Plaintiffs fail to point to any knowledge or action on the part of Fanger pertaining to the allegedly unconstitutional food. Fanger's response to interrogatories regarding food for "Prisons only" —that they pertain to food not authorized for resale—does not corroborate

---

[3] Plaintiffs also argue that the "Inmate Food Complaint list" in Exhibit 1 should have put the supervisory defendants on notice and provided them with knowledge of the alleged substandard food. This document appears to have been compiled by Plaintiffs' counsel, there is no evidence that Defendants ever would have seen it, and furthermore it consists entirely of unreliable hearsay and hearsay within hearsay. This exhibit cannot give Defendants knowledge of the allegations.

PAGE 11 – OPINION AND ORDER

Plaintiffs' allegations because the label "Prisons only" does not connote poor quality or expired food. Although Plaintiffs argue that "[i]t is not conceivable that . . . any state defendant could be unaware of the procurement, housing and kitchen delivery of such inedible and improper 'nutrition,'" they point to no evidence or facts that would give rise to an inference of such knowledge.[4] ECF 111 at 10. Unsupported allegations are insufficient to withstand summary judgment.

### F. Qualified Immunity

Defendants argue that there is no genuine dispute of fact as to whether the non-supervisory defendants violated Plaintiffs' clearly established right to food that is adequate to maintain health and therefore Defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v.*

---

[4] Indeed, when presented with a list of named defendants in this case, most Plaintiffs did not appear to have any knowledge of those individuals' involvement in their claims. *See* Def. Ex. 15 at 14 (McKey Depo.) ("I know there was a whole bunch of just random names" in the list of named Defendants).

*Creighton*, 483 U.S. 635, 638 (1987)). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap Cty*., 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar*, 137 S.Ct. at 1867. To be clearly established, "[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent. *Id.* (citations and quotation marks omitted). "The 'clearly established' requirement 'operates to

ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (alteration in original). Thus, the key inquiry in determining whether an officer has qualified immunity is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand"); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("Rather, the relevant question is whether 'the state of the law at the time gives officials fair warning that their conduct is unconstitutional.'" (quoting *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he specific facts of previous cases need not be materially or fundamentally similar to the situation in question."))).

The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). When considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins*, 710 F.3d at 1064.

The Supreme Court has instructed that courts use a two-part test to determine "whether an alleged deprivation is cruel and unusual punishment" under the Eighth Amendment. *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The first part of the test is objective: Was the deprivation sufficiently serious? The second part is subjective: Did the officials act with a sufficiently culpable state of mind?" *Id*. Prison officials cannot be held liable for violations of the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire*, 12 F.3d at 1456 (citing *Cunningham v. Jones*, 567 F.3d. 659, 660 (6th Cir. 1977)). The Ninth Circuit has held that food that "occasionally contains foreign objects" or "sometimes is served cold" and "unpleasant" does not violate the Eighth Amendment. *Id.* (quoting with approval *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)).

The bulk of Plaintiffs' claims stem from allegations that they observed food labeled "not for human consumption" in the prison kitchens and claims of occasional illness or food poisoning. Plaintiff Aldeguer testified that he suffered from diarrhea once or twice every six weeks, which he attributed to the food served at ODOC, and that his weight stayed "pretty much" the same the entire time he was in ODOC custody. Def. Ex. 2 at 11, 16-17. Plaintiff Joshua Smith testified that he gained 100 pounds while in ODOC custody. Def. Ex. 4 at 2. He also testified that he suffered from constipation. Def. Ex. 4 at 12. Plaintiff Tiffanie Lewis testified that she never ate the food labeled "not for human consumption" and instead ate the veggie trays, which she testified were "amazing." Def. Ex. 11 at 3. She testified that she never got sick while in ODOC custody. Def. Ex. 11 at 7. Plaintiff Brandon McKey testified that after getting diarrhea three times at ODOC he stopped eating pink meat patties. Def. Ex. 15 at 4. He estimated that me might have gotten sick from the food served in ODOC five times over the course of 50 months. Def. Ex. 15 at 7. Plaintiff McKey testified that he gained between 65 and 73 pounds while in ODOC custody but testified that otherwise he was "still in perfect health." Def. Ex. 15 at 5-6. None of the Plaintiffs testified that they were unable to maintain their overall

health while incarcerated. They produced no medical records corroborating any decline in health, or any evidence that they suffered from a serious medical condition as a result of the food in ODOC facilities.

Claims that food was contaminated or made Plaintiffs occasionally ill, without any supporting medical evidence of any adverse health impacts, does not create a genuine dispute of fact whether the food was constitutionally adequate. *See Brown v. Union Cty.*, 2018 WL 3371597, at *8-9 (D. Or. May 18, 2018); *Bennett*, 2004 WL 2091473, at *20 (granting summary judgment on Eighth Amendment claims where prisoners had "neither alleged nor provided evidence, such as their own medical records, to establish that they suffered significant injury or illness directly resulting from their consumption of unfit food [in prison], such as repeated symptoms of food poisoning, serious malnutrition, or drastic weight loss."). "If prisoners regularly and frequently suffer from food poisoning with truly serious medical complications as a result of particular, known unsanitary practices which are customarily followed by the prison food service organization, and the authorities without arguable justification refuse to attempt remedial measures, the requisite deliberate indifference might well be manifested or inferred." *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). Here, however, the most serious allegations complain of occasional diarrhea and vomiting, and not a single Plaintiff claims that they suffered from any medical complications, long-term consequences or serious adverse health impacts.

Although several Plaintiffs gained weight while in custody, the Ninth Circuit has considered weight gain a sign that inmates are "being fed adequately." *LeMaire*, 12 F.3d at 1456. Plaintiffs do not claim that the food offered in the vegetarian option, also called the "meat-alternative tray," which was available at every meal, ever caused any illness or contained any of the meat and fish products that Plaintiffs complain of. There is no dispute of fact that Plaintiffs

had an available option at every meal that contained none of the food items that they claim caused their illness or tasted foul (Plaintiff Tiffanie Lewis testified that she ate the vegetarian option instead of the fish and never became ill). Thus, Plaintiffs have failed to create a genuine dispute of fact as to the objective component of their Eighth Amendment claim—that they were not provided with food that was adequate to maintain their health.

Even if the Court were to accept Plaintiffs' representations that occasional illness or diarrhea fell below a standard of adequately maintained health, Plaintiffs fail to allege or establish any evidence to show that they could meet the subjective component of the Eighth Amendment test: "Did the officials act with a sufficiently culpable state of mind?" *Id.* at 1451. Although Plaintiffs do not allege that any of the Defendants served inedible food with the intent to cause harm, Plaintiffs allege that Defendants acted with deliberate indifference to their well-being.

As evidence that Defendant Fanger acted with a culpable state of mind, Plaintiffs again point to Exhibit 1, the unauthenticated hearsay notes that appear to have been compiled by Plaintiffs' counsel's office. There is no evidence that Defendant Fanger ever saw these notes, and therefore no evidence that he had knowledge of the complaints that they appear to document. None of the Plaintiffs identified Fanger as someone to whom they reported issues with the food service. Plaintiffs point to no evidence that Defendant Fanger had any knowledge of a risk to inmate health or safety, or that he ever deliberately disregarded that risk.

Plaintiffs fail to provide any evidence that Defendants Whitney or Bowser had any knowledge of the allegedly contaminated food or the alleged food-borne illnesses. Other than alleging that Whitney and Bowser are responsible for managing the food service program, Plaintiff fails to articulate any evidence that Whitney and Bowser would have had knowledge of

the specific issues that Plaintiffs complain of in this lawsuit. "At most, plaintiffs' claims of food poisoning are based on negligence, and thus they are not cognizable under § 1983." *Ferris v. Jefferson Cty.*, 2008 WL 5101240, at *6 (D. Colo. Nov. 26, 2008).

Several Plaintiffs claim that they complained to Defendants Helton and Timmons about the quality of the food in ODOC facilities and therefore Defendants Helton and Timmons had actual knowledge of the quality of the food and acted with deliberate indifference in serving it. But, as discussed above, even if Defendants Helton and Timmons knew of Plaintiffs' complaints, it is not clearly established that these complaints rise to the level of an Eighth Amendment violation.

The standard under the Eighth Amendment, as discussed above, is that the food must be adequate for inmates to maintain their health. "Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation." *Bennett*, 2004 WL 2091473, at *20. Courts have approved of serving food with foreign objects in it, *LeMaire*, 12 F.3d at 1456, food blended, baked, and served in a "nutraloaf," *id.*, "moldy" raisins and "rancid" peanut butter, *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004), and even maggots, *Islam v. Jackson*, 782 F. Supp. 1111, 1114-15 (E.D. Va. 1992). It was not clearly established that serving fish not intended for human consumption or spoiled meat and milk on occasion violated the Eighth Amendment, especially when there is no dispute that the vegetarian meals (which no Plaintiff alleges ever caused illness) were available to inmates at every meal. Thus, even for Defendants who may have had knowledge of Plaintiffs' complaints about the quality of the food at ODOC facilities, it was not clearly established that serving food that tastes bad or even causes

inmates to occasionally become ill after eating it, but causes no serious or long-term health impacts, violates the Eighth Amendment.

In sum, all Defendants are entitled to qualified immunity because Plaintiffs have not produced evidence to create a genuine dispute of fact as to whether Plaintiffs were able to maintain their health. Even assuming that the food was objectively inadequate to maintain inmate health, Plaintiffs have not demonstrated that Defendants either knew about the food quality or that it was clearly established that food of the quality that the inmates describe here, which caused occasional illness but no other adverse health impacts, was constitutionally inadequate. Defendants are entitled to qualified immunity.

**G. Sanitation**

Plaintiffs' claim for unsanitary conditions is not materially distinguishable from Plaintiff's claim for serving unwholesome food because it rests on allegations that Defendants served spoiled and bad-tasting food. *See* ECF 40 ¶ 28a (Defendants "[f]ailed to maintain sanitary conditions and serve unspoiled, healthy and nutritious food, and instead served food marked 'not for human consumption,' spoiled milk, wilted produce and moldy breads."). Therefore, for the reasons discussed above, Plaintiffs' claim for unsanitary conditions fails to raise a genuine issue of material fact.

## CONCLUSION

Plaintiffs have failed to establish a genuine dispute of material fact on any of their claims. Defendants' Motion for Summary Judgment (ECF 95) is granted. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 22nd day of July, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge